**THE DISTRICT COURT OF GUAM**

WEILI FU, RENGE LI, XIAOLIN GUO,

Petitioners,

vs.

COLONEL ALAN P. BORJA, WARDEN OF THE GUAM DEPARTMENT OF CORRECTIONS; CAPTAIN JOEY L.G. POCAIGUE, COMMANDER OF THE HAGÅTÑA FEDERAL DETENTION FACILITY; JOHN DOE, FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS, SAN FRANCISCO FIELD OFFICE; KATHY MAKAENA, ASSISTANT FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS, SAN FRANCISCO FIELD OFFICE; KRISTI NOEM, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES,

Respondents.

CIVIL CASE NO. 25-00048

**DECISION & ORDER GRANTING PETITIONERS' WRIT OF HABEAS CORPUS**

This matter comes before the court on Petitioners Weili Fu, Renge Li, and Xiaolin Guo's Petition for Writ of Habeas Corpus, Complaint for Declaratory and Injunctive Relief, *Ex Parte* Motion for Order to Show Cause, and Motion for Release on Bail Pending Habeas Adjudication. ECF Nos. 1, 2, 60, 63. The court has reviewed and considered the parties' briefings, the relevant law, and the arguments made at the hearings.

For the reasons stated herein, the court hereby GRANTS Petitioners' Writ of Habeas Corpus based on the ninth claim alleged in their amended complaint**.** ECF No. 60. That claim specifically focuses on their prolonged detention without a bond hearing as violative of their due process rights.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

There are three petitioners in this case: Weili Fu, Renge Li, and Xiaolin Guo. For clarity, the court will state the factual backgrounds of each petitioner separately.

#### 1. WEILI FU

Petitioner Fu is a citizen of the People's Republic of China ("PRC"). ECF No. 60, at 4 ¶ 3. On June 11, 2016, he entered the Commonwealth of the Northern Mariana Islands ("CNMI") via the Saipan International Airport and the U.S. Customs and Border Protection ("CBP") "agent stamped Petitioner Fu's passport with [a] stamp indicating that he was 'paroled' into the CNMI"[1] and was "authorized to remain until June 30, 2016."[2] *Id.* at 39 ¶¶ 206-07. Petitioner Fu stayed beyond this date. Petitioner Fu never applied for asylum while in the CNMI, even though he wished to, and the U.S. Department of Homeland Security ("DHS") never initiated removal

[1] Although parole is an authorized entry into the United States, it does not constitute an admission to the United States. INA secs. 101(a)(13)(B), 212(d)(5)(A); 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A).

[2] In addition to having his passport stamped, Petitioner Li completed and signed a Guam-CNMI Visa Waiver Information Form I-736. *Id.* at 40 ¶ 210.

proceedings against Petitioner while he lived in the CNMI – even after his parole expired. *Id.* at 40 ¶¶ 212-15.

On or about July 6, 2024, Petitioner Fu traveled by boat to Guam. *Id.* at 40 ¶ 216. He did not enter at a port of entry and was not inspected upon arrival. *Id.* While on Guam, Petitioner Fu filed an affirmative asylum application Form I-589. *Id.* at 41 ¶ 217. U.S. Citizenship and Immigration Services ("USCIS") granted Petitioner Fu employment authorization, and he has "remained on Guam, obeyed all laws of Guam, and maintained lawful employment on Guam." *Id.* at 41 ¶¶ 219-22. The U.S. Immigration and Customs Enforcement ("ICE") closed his asylum application sometime later and forwarded his asylum case to an immigration court for adjudication. *Id.* at 43 ¶ 236.

On May 26, 2025, ICE detained Petitioner Fu and placed him in custody at the Hagåtña Detention Facility in Agana, Guam. *Id.* at 41 ¶¶ 223-24; *id.* at 45 ¶ 251. That day, ICE served Petitioner Fu with a Form I-862 Notice to Appear which designated him as an "arriving alien" under the INA. *Id.* at 42 ¶¶ 228, 231. ICE and DHS referred Petitioner for full Immigration and Nationality Act ("INA") § 240 removal proceedings before an immigration judge instead of an expedited removal proceeding and a credible fear interview. *Id.* at 42 ¶ 227. *But see* ECF No. 65, at 14 ¶ 227 (Respondents denied conducting a credible fear interview).

On June 16, 2025, Petitioner Fu appeared at his immigration hearing.[3] *Id.* at 42 ¶ 232. The immigration judge determined that Petitioner was ineligible for bond as an "arriving alien." *Id.* at 42 ¶ 232. Also, on June 16, 2025, Petitioner Fu submitted a parole request to ICE pursuant to the 2009 ICE Parole Directive, asking to be paroled based on his ties to the community, lack of flight risk, lack of criminal history, lack of danger to the community, and his pending

[3] "The Honolulu Immigration Court has administrative control over the Guam and Saipan Immigration Courts." ECF No. 55-1, at 4.

affirmative asylum application. *Id.* at 43 ¶¶ 233-34. On July 8, 2025, the ICE/ERO[4] San Francisco Field Office denied his parole application in a letter that matched other denial letters from ICE "verbatim," except it had Petitioner Fu's name on it.[5] *Id.* at 43 ¶¶ 238-39. *But see* ECF No. 65, at 15 ¶ 239 (Respondents denied this allegation). ICE never provided Petitioner with the ERO fact sheet titled Parole Advisal and Scheduling Notification, the DHS's worksheet titled Record of Determination/Parole Determination Worksheet, or the Interim Notice Declining Parole. *Id.* at 44 ¶¶ 240-42.

"On October 16, 2025, the Immigration Judge denied the Petitioner's application for asylum, partially due to a legal question of first impression related to whether Petitioner's time spent in the CNMI deems his application for asylum as untimely, holding that Petitioner could have applied for withholding of removal while in the CNMI, despite the fact that the plain language of the applicable laws demonstrates that it would have been impossible for him to apply for such relief." *Id.* at 45 ¶ 249. Petitioner Fu filed an appeal to the Board of Immigration Appeals on November 12, 2025.[6] *Id.* at 45 ¶ 250.

2. RENGE LI

Petitioner Renge Li is a citizen of the PRC. ECF No. 60, at 3 ¶ 2. On June 6, 2016, he entered the CNMI via the Saipan International Airport and the CBP official paroled Petitioner Li. *Id.* at 31 ¶¶ 149-50. CBP authorized his stay until June 19, 2016, but Petitioner Li stayed beyond this date.[7] *See id*. Petitioner Li never applied for asylum while living in the CNMI even though he wished to. *Id.* at 32 ¶¶ 155-58. He "went to an immigration office in Saipan multiple times,

[4] "ERO" stands for Enforcement and Removal Operations.

[5] The denial letter stated "[t]here is no administrative appeal of this decision." *See* ECF 54-4.

[6] Petitioner Fu's appeal is currently pending. ECF No. 70; *see also infra* note 28.

[7] In addition to having his passport stamped, Petitioner Li completed and signed a Guam-CNMI Visa Waiver Information Form I-736. *See id.* at 32 ¶ 153.

specifically requesting to apply for protection such as asylum or withholding of removal. However, the immigration officials repeatedly told Petitioner Li that they could not accept his application in Saipan." *Id.* at 32 ¶ 159. DHS never initiated removal proceedings against Petitioner Li while he lived in the CNMI. *Id.* at 32 ¶ 158.

In June of 2022, Petitioner Li traveled by boat to Guam. *Id.* at 33 ¶ 160. He did not enter at a port of entry and was not inspected upon arrival. *Id.* While on Guam, Petitioner Li filed an affirmative asylum application Form I-589. *Id.* at 33 ¶ 161. USCIS granted Petitioner Li authorization to work, and he has "remained on Guam, obeyed all laws of Guam, and maintained lawful employment on Guam." *Id.* at 33 ¶¶ 163-66. ICE closed his asylum application sometime later and forwarded his case to an immigration court for adjudication. *Id.* at 36 ¶ 189.

On June 3, 2025, ICE detained Petitioner Li and placed him in custody at the Hagåtña Detention Facility. *Id.* at 33-34 ¶¶ 167-72; *id.* at 38 ¶ 204. That same day, ICE served Petitioner Li with a Form I-862 Notice to Appear which designated him as an "arriving alien" under the INA. *Id.* at 35 ¶¶ 176, 179. ICE and DHS referred Petitioner for full INA § 240 removal proceedings before an immigration judge instead of an expedited removal proceeding and a credible fear interview. *Id.* at 34 ¶ 175. *But see* ECF No. 65, at 10 ¶ 175 (Respondents denied conducting a credible fear interview).

Petitioner Li had a custody redetermination hearing on June 11, 2025. *Id.* at 35 ¶ 183. The immigration judge determined that Petitioner Li was ineligible for bond as an "arriving alien" and that the immigration court had no jurisdiction to review DHS's designation of Petitioner Li as an "arriving alien." *Id.* at 35-36 ¶¶ 184-85.

On June 16, 2025, Petitioner Li submitted a parole request to ICE pursuant to the 2009

ICE Parole Directive, asking to be paroled based on his serious medical condition,[8] ties to the community, lack of flight risk, lack of criminal history, lack of danger to the community, and his pending affirmative asylum application. *Id.* at 36 ¶¶ 186-88. On July 8, 2025, the ICE/ERO San Francisco Field Office denied his parole application in a letter that matched other denial letters from ICE "verbatim," except it had Petitioner Li's name on it.[9] *Id.* at 37 ¶¶ 191-92. *But see* ECF No. 65, 11 at ¶ 192 (Respondents denied this allegation). ICE never provided Petitioner with the ERO fact sheet titled Parole Advisal and Scheduling Notification, the DHS's worksheet titled Record of Determination/Parole Determination Worksheet, or the Interim Notice Declining Parole. *Id.* at 37 ¶¶ 193-95.

"On October 10, 2025, the Immigration Judge denied the Petitioner's application for asylum, partially due to a legal question of first impression related to whether Petitioner's time spent in the CNMI deems his application for asylum as untimely, holding that Petitioner could have applied for withholding of removal while in the CNMI, despite the fact that the plain language of the applicable laws demonstrates that it would have been impossible for him to apply for such relief." *Id.* at 38 ¶ 202. Petitioner Li filed an appeal to the Board of Immigration Appeals on November 5, 2025.[10] *Id.* at 38 ¶ 203.

3. <u>XIAOLIN GUO</u>

Petitioner Xiaolin Guo is a citizen of the PRC. ECF No. 60, at 3 ¶ 1. On April 29, 2019, he entered the CNMI via the Saipan International Airport and the CBP official paroled Petitioner Guo. *Id.* at 23-24 ¶¶ 95-96. CBP authorized his stay until May 13, 2019, but Petitioner stayed

---

[8] Petitioner Li alleges that he has faced several physical and legal abuses since being detained. *Id.* at 38 ¶ 204; *id.* at 35 ¶ 182. He has also stated that he suffers from serious medical issues including heart disease and diabetes. *Id.* at 35 ¶¶ 180-81.

[9] The denial letter stated "[t]here is no administrative appeal of this decision." *See* ECF 56-4.

[10] Petitioner Li's appeal is currently pending. ECF No. 70; *see also infra* note 28.

beyond this date.[11] *See* ECF No. 55-3, at 30. Petitioner Guo never applied for asylum while living in the CNMI, even though he wished to, and DHS never initiated removal proceedings against Petitioner Guo while he lived in the CNMI – even after his authorized parole had expired. ECF No. 60, at 24-25 ¶¶ 101-04.

On or about May 15, 2022, Petitioner Guo traveled by boat to Guam. *Id.* at 25 ¶ 105. He did not enter at a port of entry and was not inspected upon arrival. *Id.* While on Guam, Petitioner Guo filed an affirmative asylum application Form I-589. *Id.* at 25 ¶ 106. USCIS granted Petitioner Guo authorization to work, and he has "remained on Guam, obeyed all laws of Guam, and maintained lawful employment on Guam." *Id.* at 25 ¶¶ 108-11. ICE closed his asylum application sometime later and forwarded it to an immigration judge for adjudication. *Id.* at 28 ¶ 132.

On June 2, 2025, ICE detained Petitioner Guo and placed him in custody at the Hagåtña Detention Facility. *Id.* at 26 ¶ 115; *id.* at 30-31 ¶ 147. That same day, ICE served Petitioner Guo with a Form I-862 Notice to Appear which designated him as an "arriving alien." *Id.* at 27 ¶¶ 121, 124. ICE and DHS referred Petitioner for full INA § 240 removal proceedings before an immigration judge instead of an expedited removal proceeding and a credible fear interview. *Id.* at 27 ¶ 120. *But see* ECF No. 65, at 6 ¶ 120 (Respondents denied conducting a credible fear interview).

On June 16, 2025, Petitioner Guo submitted a parole request to ICE pursuant to ICE Directive No. 11002.1, asking to be paroled based on his serious medical condition,[12] ties to the community, lack of flight risk, lack of criminal history, lack of danger to the community, and his

---

[11] In addition to having his passport stamped, Petitioner completed and signed a Guam-CNMI Visa Waiver Information Form I-736. *See* ECF No. 60, at 24 ¶ 99.

[12] Petitioner Guo alleges that he has faced several physical and legal abuses since being detained. *Id.* at 30-31 ¶ 147. He has also stated that he has "more than one serious medical condition including a rare skin condition and severe central spinal stenosis and cord compression." *Id.* at 26 ¶ 112.

pending affirmative asylum application. *Id.* at 28 ¶¶ 128-30. On July 8, 2025, the ICE/ERO San Francisco Field Office denied his parole application in a letter that matched other denial letters "verbatim," except it had Petitioner Guo's name on it.[13] *Id.* at 29 ¶¶ 134-35. *But see* ECF No. 65, at 7 ¶¶ 134-35 (Respondents denied this allegation). ICE never provided Petitioner Guo with the ERO fact sheet titled Parole Advisal and Scheduling Notification, the DHS's worksheet titled Record of Determination/Parole Determination Worksheet, or the Interim Notice Declining Parole. *Id.* at 29 ¶¶ 136-38.

On June 18, 2025, Petitioner Guo's immigration Master Calendar hearing was held virtually. The immigration judge determined that Petitioner Guo was ineligible for bond as an "arriving alien" and that the immigration court had no jurisdiction to review DHS's designation of Petitioner Guo as an "arriving alien." *Id.* at 27-28 ¶¶ 125-27.

"On September 5, 2025, the Immigration Judge denied the Petitioner's application for asylum, partially due to a legal question of first impression related to whether Petitioner's time spent in the CNMI deems his application for asylum as untimely, holding that Petitioner could have applied for withholding of removal while in the CNMI, despite the fact that the plain language of the applicable laws demonstrates that it would have been impossible for him to apply for such relief." *Id.* at 30 ¶ 145. Petitioner Guo filed an appeal to the Board of Immigration Appeals on September 22, 2025.[14] *Id.* at 30 ¶ 146.

## B. PROCEDURAL BACKGROUND

On December 29, 2025, Petitioners Weili Fu, Renge Li, and Xiaolin Guo filed a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and a Complaint for Declaratory and Injunctive Relief. ECF No. 1. Two days later, on December 31, 2025, they filed an *Ex Parte* Motion for Order to

---

[13] The denial letter stated "[t]here is no administrative appeal of this decision." *See* ECF 55-4.

[14] Petitioner Guo's appeal is currently pending. ECF No. 70; *see also infra* note 28.

Show Cause or to Grant Habeas Petition Forthwith on why the writ should not be granted. ECF No. 2. The court ordered the Respondents to show cause why the writ for habeas corpus should not be granted.[15] *See* ECF No. 10. On January 5, 2026, Respondents filed their Opposition to the *Ex Parte* Motion for Order to Show Cause and Petitioners filed their Reply on January 20, 2026. ECF Nos. 16, 33.

On January 21, 2026, the court scheduled a hearing for the habeas petition. The court however had to continue the hearing because the Petitioners' interpreter was not present, and the court and the parties wanted to ensure that the Petitioners would be able to fully participate in the hearing. ECF No. 35.

From February 3 to February 6, 2026, the court held hearings on Petitioners' habeas petition. Nos. 52, 53, 57, 58. The court joined one other petitioner, Petitioner Deng, who had filed his habeas petition on December 18, 2025.[16] Petitioner Deng was represented by the same counsel, Julia Johnson. His factual background was similar to the three Petitioners before the court. Petitioner Deng's arguments were also similar to the three Petitioners in the case at bar. Finally, Petitioner Deng and Petitioners Fu, Li, and Guo were all confined at the Hagåtña Detention Facility.[17] For these four reasons, the court combined the hearings in the interest of the efficiency.

All four of the Petitioners testified about the state of their confinement at the Hagåtña Detention Facility. ECF No. 57. Specifically, they testified about the detention facility's

---

[15] Respondents in this matter are Colonel Alan P. Borja, Warden of the Guam Department of Corrections; Captain Joey L.G. Pocaigue, Commander of the Hagåtña Federal Detention Center; John Doe, Field Office Director for U.S. Immigration and Customs Enforcement; Kathy Makaena, Assistant Field Office Director for U.S. Immigration and Customs Enforcement; Kristi Noem, Former Secretary of U.S. Department of Homeland Security; and Pam Bondi, Former U.S. Attorney General.

[16] Petitioner Deng's case number is 1:25-cv-00046.

[17] Petitioner Deng has since been released from custody. ECF No. 70.

inadequate air conditioning, overcrowding, water leaks, unhealthy food, contaminated water, substandard medical care, lack of legal resources, and absence of translation services. The Petitioners told the court that there had been no air conditioning for weeks, and that even when three new air conditioning units were installed in the day room, the air flow failed to reach their cells. The cells they lived in had bunk beds designed for two people, yet, Petitioner Guo was in a cell with three people and Petitioner Deng was in a cell with four people. This meant that these two Petitioners had to sleep on mattresses on their cell floors although there were available bunks for Petitioners in uninhabited cells. The mattresses were approximately two to three inches thick.[18] Moreover, the floors and the walls of the cells were wet from rain seeping in and from water leaking out of the cells' toilets.

The Petitioners testified that cockroaches, ants, and termites infested the cells, and that these pests would crawl on them. They also told the court that the rice that the detention staff served them was half-cooked and that the chicken meal that was provided contained both plastic and hair. They further stated that the drinking water was dirty and that a thick layer of what looked like eggshells would float to the surface when they would use the drinking water to cook their instant noodle soup.

The Petitioners testified about their difficulties accessing medical care because of a lack of a Chinese interpreter. They stated that they did not know how to file a medical request that would be timely addressed, which was important to the Petitioners with serious medical conditions. *See* ECF No. 56-3 (Petitioner Li has diabetes and heart disease), ECF No. 55-3 (Petitioner Guo has a rare skin condition and severe central spinal stenosis and cord compression). In addition to their inability to access a Chinese interpreter, they also testified that

---

[18] On March 10, 2026, Sergeant Alexis D. Aromin testified that there were available bunks in other cells during the times the Petitioners were detained at the Hagåtña Detention Facility and that he would resolve this issue. ECF No. 69.

it was difficult to communicate with the nurses and the doctor on staff because neither spoke Chinese nor had a Chinese interpreter available at the facility. Petitioner Li even testified that he went weeks without his essential diabetes medication. Petitioners also stated that the ICE agents did not check in on them regularly, and as a result, their medical requests were untimely addressed, if addressed at all.[19]

Respondents contested their legal arguments but chose not to call any witnesses or provide any exhibits to rebut the testimony about the detention facility's inadequate air conditioning, cell assignments, water leaks, bug infestation, unhealthy food and water, substandard medical care, and absence of a Chinese interpreter.

Respondents replied that many of these issues could simply be resolved if the Petitioners agreed to move to the Honolulu Detention Center in Hawaii, but Petitioners rejected this offer. Petitioners testified that they chose to stay in the Hagåtña Detention Facility because they wanted to have full and reliable access to their attorney and be closer to their families, communities, homes, and jobs. They also expressed that their habeas and immigration cases would be better served if they had constant access to their lawyer, who represents them all in both sets of proceedings.

The court concluded the hearings on the habeas petitions and decided to take the habeas petitions under advisement. ECF No. 58. The court then scheduled a hearing on the issue of bail and ordered the parties to file briefs on the issue.[20] *See id*. On February 17, 2026, Petitioners filed their Motion for Release on Bail Pending Habeas Adjudication and Respondents filed their

---

[19] The court asked Rodney Sayama, Supervisory Detention and Deportation Officer for DHS, to testify. See ECF No. 58. He explained that ICE agents do conduct one routine, weekly check on the immigration detainees, and they try to do an additional, second check each week. But he confirmed that ICE agents do not individually check-in on each detainee.

[20] The court, at the request of the Petitioners, further ordered the government to keep Petitioners on island pending the resolution of the habeas proceedings. *See* ECF No. 59.

Opposition on February 27, 2026. ECF Nos. 63, 64.

On February 13, 2026, Petitioners filed the First Amended Complaint to add a claim for unconstitutionally prolonged detention in violation of the Due Process Clause of the Fifth Amendment. ECF No. 60, at 56. On March 3, 2026, Respondents filed their Answer to the First Amended Complaint. *See* ECF No. 65. Respondents asserted in their Answer that the Petitioners failed to state a claim upon which relief could be granted, the court lacks subject matter jurisdiction over the claims brought, Petitioners should be litigating these claims before the immigration court, and Petitioners are properly being held in mandatory custody under 8 U.S.C. § 1225(b)(2) because they are "arriving aliens" who were paroled into the country pursuant to 8 U.S.C. § 1182(d)(5). *See id.* at 17-18.

On March 9[21] and March 10, 2026, the court held its hearings on the Motion for Release on Bail Pending Habeas Adjudication. ECF Nos. 68, 69. The parties presented their legal arguments on the issue of bail, and Respondents called Sergeant Alexis D. Aromin, a unit manager at the Hagåtña Detention Facility, to rebut Petitioners' testimony about the conditions of confinement at the facility. ECF No. 69.

Mr. Aromin testified that the Petitioners stayed in Alpha block, which was designated for federal detainees only, and had sixteen cells.[22] He stated that two of the cells were inoperable because of issues with leaks, but he testified that no one had raised concerns regarding the remaining cells. The remaining fourteen cells each had two bunks – which was enough for the

---

[21] Petitioners filed their Reply to the Respondent's Opposition on the day of the hearing at 8:51 a.m. Chamorro Standard Time. ECF No. 66. They then filed a Declaration in Support of the Reply at 8:54 a.m. Chamorro Standard Time. ECF No. 67. The hearing was scheduled for 9:00 a.m. Chamorro Standard Time, which meant that the court, and the government were unable to read the contents of the filings before the hearing. Accordingly, the court continued the hearing until 2:15 p.m. Chamorro Standard Time to give the government and the court time to read the filings that they would have to consider during the hearing.

[22] Mr. Aromin stated that Alpha block used to house both federal criminal detainees and federal immigration detainees before the court ordered the federal criminal detainees to be held elsewhere. *See U.S. v. McLain*, No. 1:11-cr-00058, ECF No. 437 (D. Guam Dec. 19, 2025). All federal criminal detainees were moved off the island of Guam. In particular, they were transferred to Saipan, Hawaii, or a federal facility on the mainland.

twenty-two federal immigration detainees then being held there. Still, Mr. Aromin confirmed that Petitioner Guo and Petitioner Deng (the other immigration detainee discussed earlier herein from 1:25-cv-00046) were assigned to two-man cells. However, Petitioner Guo was confined with two other detainees and Petitioner Deng was confined with three other detainees. Respondents produced a mattress as a demonstrative exhibit showing that each detainee had a mattress that was about two to three inches thick to sleep on.

Mr. Aromin testified about Petitioners' other concerns as well. He stated that he did not notice a bug infestation when he passed through the block, but he conceded that he did not inspect each individual cell. He said that the facility had a filter for its water and that the water filter was changed periodically. He contested the characterization that the facility was too hot and responded that he was asked to turn the temperature up because certain unidentified detainees had been complaining that it was too cold. He also testified that there was no formal orientation or procedure for processing complaints. The officers, including himself, would do their best to communicate with the detainees through google translate and by using other detainees as interpreters. He told the court that detainees could place medical requests in sick call boxes that were private. He testified that the facility accommodated legal visits on Saturdays, and the detainees would meet with their attorneys in a room where the guards would stand on the other side of the room, about five to ten feet away from detainees.

The parties concluded their arguments and agreed that if the court ruled favorably on Petitioners' unconstitutionally prolonged detention claim then the rest of the claims would be moot as the Petitioners' desired relief of a bond hearing would be granted. The court took this matter under advisement and informed the parties that it would issue its Decision and Order.

## II. JURISDICTION

Petitioners assert federal court jurisdiction pursuant to the court's power to grant writs of

habeas corpus, 28 U.S.C. § 2241; the court's federal question jurisdiction, 28 U.S.C. § 1331; the court's authority under the Suspension Clause of the Constitution, Article I § 9, Clause 2; the court's authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; and the court's power to grant declaratory relief, 28 U.S.C. § 2201. *See* ECF No. 60, at 5 ¶ 10. District courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Although neither party had independently raised the issue of jurisdiction, the court *sua sponte* requested that they brief the matter further.[23] *See* ECF Nos. 35, 40, 42, 43, 44.

As a result of the briefings and arguments, the court has identified the following jurisdiction channeling and stripping provisions as relevant for its analysis of the due process claim for prolonged detention: 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g). The court concludes that the jurisdiction channeling and stripping provisions of the INA do not limit this court's subject matter jurisdiction over this claim. Since the court is confining its decision solely to claim number nine, it need not discuss jurisdiction as it relates to Petitioners' other claims.

Section 1252(b)(9) is a jurisdiction channeling provision, and it limits the district courts' "[j]udicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States." This section "channel[s] judicial review over *final orders of removal* to the courts of appeals." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added). The INA does not withhold jurisdiction from district courts for "federal habeas corpus petitions that do not involve final orders of removal." *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1075 (9th Cir. 2006). Section 1252(b)(9) "is a 'targeted' and 'narrow' provision that 'is certainly not a bar where … the parties are not challenging any removal

[23] The court requested further briefing on the matter because the INA has several provisions that strip district courts of jurisdiction to hear immigration matters or channel jurisdiction to the court of appeals. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 476-87 (1999).

proceedings.'" *Gonzalez v. United States Immigr. and Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020)). District courts must decide the "claims that are independent of or collateral to the removal process" because those claims "do not fall within the scope of § 1252(b)(9)." *J.E.F.M.*, 837 F.3d at 1031.

Section 1252(g) is a jurisdiction stripping statute that provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The language of this provision does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings*, 583 U.S. at 294; *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("[W]e should read § 1252(g) narrowly."). Rather, this provision of the INA "refer[s] to just those three specific actions themselves." *Id.* (citing *American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-83 (1999)). For example, § 1252(g) does not bar claims that challenge decisions or actions "such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Ibarra-Perez*, 154 F.4th at 996 (quoting *American-Arab Anti-Discrimination Comm.*, 525 U.S. at 482).

The Supreme Court has upheld district court jurisdiction over prolonged detention claims. *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (finding that § 1252(b)(9) of the INA did not limit the district court's jurisdiction to hear the prolonged detention claim). As such, under the Supreme Court's precedent, Petitioners' constitutional challenges to their prolonged detentions are not barred by the INA because they do not challenge a final order of removal or a "decision or action … to commence proceedings, adjudicate cases, or execute removal orders."

*See* 8 U.S.C. §§ 1252(b)(9), 1252(g).

Respondents cite multiple cases to argue that this court does not have jurisdiction to hear Petitioners' claims, but the court focuses its analysis on two of these cases: *Tazu v. Attorney General United States* and *Wang v. Derr*, because they appear to represent Respondents' strongest arguments for the application of 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g).

Respondents cite *Tazu v. Attorney General United States* to assert that the INA prohibits judicial review of constitutional claims that arise from the commencement of removal proceedings. *See* ECF No. 64, at 8. But the facts from *Tazu v. Attorney General United States* are inapposite to the present facts. 975 F.3d 292 (3d Cir. 2020). In *Tazu*, the petitioner requested an order preventing the attorney general from executing his removal or an order to stay his removal. *See id.* at 296. Accordingly, the Third Circuit held that the petitioner was challenging the Attorney General's decision to execute a final removal order which the district court was precluded from hearing under § 1252(b)(9) and § 1252(g).[24] *See id.* at 297.

Unlike the petitioner in *Tazu*, Petitioners Fu, Li, and Guo are not challenging DHS's decision to execute a removal order. Petitioners are challenging the constitutionality of their detention, which is an issue that the Supreme Court has agreed is within the court's purview. *See Jennings*, 583 U.S. at 293. Accordingly, the holding from *Tazu* is not applicable here because Petitioners challenge their unconstitutionally prolonged detentions without a bond hearing, not the government's decision to execute a removal order.

As for Respondents' second case, *Wang v. Derr*, the court finds this case also does not apply to Petitioners' prolonged detention claim. In *Wang*, the court held that the petitioner's claim challenging his designation as an "arriving alien" was connected to DHS's discretionary

---

[24] The Third Circuit did separately note that "that unless the Attorney General first has the authority under the Immigration and Nationality Act to remove an alien, § 1252(g) cannot shield the Attorney General's discretionary use of that authority." *Id.*

decision to commence removal proceedings. *See* No. 25-CV-00231 JAO-RT, *26 (D. Haw. Jul. 16, 2025). Therefore, the court held that the "mandated detention was essentially close enough to the commencement of proceedings to be barred under § 1252(g)." *Id.* at *27. As the court is only focusing on the Fifth Amendment due process claim for prolonged detention, the court finds that *Wang*, which focused on DHS's discretionary decision to commence removal proceedings, does not preclude the court's review of a constitutional claim.[25] As such, the court can decide Petitioners' prolonged detention claim.

## III. LEGAL STANDARD

District courts grant writs of habeas corpus to those held in "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zhakuov v. Noem*, No. 3:26-cv-00288-RBM-DDL, 2026 WL 517981, *1 (S.D. Cal. Feb. 25, 2026) ("A writ of habeas corpus is available to every individual detained within the United States.") (internal citations and quotation marks omitted). "Habeas corpus entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Ledesma Gonzalez v. Bostock*, 808 F.Supp.3d 1189, 1196 (W.D. Wash. 2025) (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (internal quotation marks omitted). The petitioner bears the burden of "proving that he is being held contrary to the law, … [and] he must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Aditya W. H. v. Trump*, 782 F.Supp.3d 691, 703 (D. Minn. 2025)).

---

[25] Moreover, the court concludes that if had reached a final decision on the statutory interpretation claims presented here, it would have had jurisdiction over them. *See Wheeler v. U.S. Immigr. and Customs Enf't*, No. CV-25-103-GF-BMM, 2026 WL 74161, *4 (D. Mont. Jan. 9, 2026) ("Section 1252(g) does not shield challenges to detention orders from judicial review."), *Serrato v. Anderson*, No. 4:25-cv-00603-BLW, 2025 WL 3229001, *1 (D. Idaho Nov. 19, 2025) (finding that neither § 1252(b)(9) and § 1252(g) did not strip the federal district court of jurisdiction over petitioner's claim because he was challenging the "nature of the Government's detention authority"); *see also Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL, 2025 WL 2821282, *3 (D. Ariz. Oct. 3, 2025) (holding Section 1252(b)(9) does not strip subject matter jurisdiction from a claim challenging the government's statutory interpretation relating to detention during removal proceedings).

## IV. DISCUSSION

Under Petitioners' claim for unconstitutionally prolonged detention, the parties agree that the Petitioners are subject to mandatory detention under 8 U.S.C. § 1225(b).[26] Accordingly, the issue before the court is whether Petitioners' due process rights have been violated under the circumstances of this case.

Petitioners argued at the bail hearing that their detentions without a bond hearing had lasted for a prolonged period of, at that time, over nine months; that a final order of removal was not reasonably imminent; and that the conditions of their confinement were penal in nature. Respondents explained that the immigration system requires time and that the "waiting process is an inhibition on large numbers attempting the same entry pathway." ECF No. 64, at 22. They also argued that Petitioners had not been languishing in detention. ECF No. 69.

For the reasons discussed below, the court concludes that an unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process, and that, in this instance, Petitioners' detentions have become prolonged.[27]

### A. DUE PROCESS

The Due Process Clause of the Fifth Amendment states that "[n]o person shall be … deprived of life, liberty, or property, without due process of the law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of the law in deportation proceedings, and a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Tonoyan v. Andrews*, No. 1:25-cv-00815-SKO, 2025 WL 3013684, *3 (E.D. Cal. Oct. 28, 2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993), and *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)) (internal citations and quotation marks omitted).

---

[26] Although the parties disagree over whether Petitioners were held under 8 U.S.C. § 1225(b)(1) or 8 U.S.C. § 1225(b)(2), no court has found that this distinction is important for a prolonged detention due process claim.

[27] The court deems the remaining claims moot as the parties agreed to at the bail hearing. *See* ECF No. 69.

Yet, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

The Ninth Circuit has noted that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) (emphasis in original). The majority of district courts, however, have determined that prolonged detention of immigration detainees under 8 U.S.C. § 1225(b) without a bond hearing will eventually become unreasonable. *See Banda v. McAleenan*, 385 F.Supp.3d 1099, 1116 (W.D. Wash. 2019); *Bayani v. LaRose*, No. 26-cv-0266-JES-VET, 2026 WL 194748, *2 (S.D. Cal. Jan. 26, 2026); *Abduraimov v. Andrews*, No. 1:25-cv-00843-EPG-HC, 2025 WL 2912307, *9 (E.D. Cal. Oct. 14, 2025); *Arechiga v. Archambeault*, No. 2:23-cv-00600-CDS-VCF, 2023 WL 5207589, *3 (D. Nev. Aug. 11, 2023). This court joins the majority of district courts that have found that prolonged detention of immigration detainees under 8 U.S.C. § 1225(b) without a bond hearing eventually violates the Due Process Clause.

**B. PROLONGED DETENTION**

The court must sift through various district court decisions to determine whether due process has been violated when prolonged detention without a bond hearing has occurred. The court has found four tests that have been adopted throughout the district courts. One court adopted a bright-line rule. *See Rodriguez v. Nielsen*, No.18-cv-04187-TSH, 2019 WL 7491555, *6 (N.D. Cal. Jan. 7, 2019) (holding that detention under 1226(c) "becomes prolonged after six months and entitles [a detainee] to a bond hearing"). Other courts have used the three-factor balancing test from *Lopez v. Garland*, 631 F.Supp.3d 870, 879 (E.D. Cal. 2022) or the due process test from *Mathews v. Eldrige*, 424 U.S. 319 (1976). *See Zagal-Alcaraz v. ICE Field*

*Office*, No. 3:19-cv-01358-SB, 2020 WL 1862254, *4 (D. Or. Mar. 25, 2020).

The court today chooses to adopt the fourth test, the six-factor test as outlined in *Banda v. McAleenan*, 385 F.Supp.3d 1099 (W.D. Wash. 2019) (applying the multi-factor test for a § 1225(b) detainee). The court applies the multi-factor test from *Banda* for three reasons. First, a bright-line rule "is inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Banda*, 385 F.Supp.3d at 1117. Second, "the *Lopez* court analyzed those factors in the § 1226 context." *Hussain v. LaRose*, 3:26-cv-00194-RBM-MSB, 2026 WL 206715, *2 (S.D. Cal. Jan. 27, 2026). Third, "the *Mathews* test balances the benefits or burdens of *additional* or *substitute* procedural safeguards and therefore does not resolve the more fundamental issue of whether *any* procedure–such as a bond hearing–must be provided." *Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 920 (W.D. Wash. 2020) (quoting *Banda*, 385 F.Supp.3d at 1106) (emphasis in original) (internal quotation marks omitted). As such, the court applies the six-factor balancing test for those held under § 1225(b)'s mandatory detention. *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, *4 (W.D. Wash. Apr. 11, 2022); *see also Bayani*, 2026 WL 194748, *3-4 (applying the *Banda* test in the context for a § 1225(b) detainee); *Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, *1 (W.D. Wash. Sept. 8, 2025) (applying the *Banda* test in the context for a § 1225(b) detainee); *Arechiga*, 2023 WL 5207589, *4 (applying the *Banda* test in the context for a § 1225(b) detainee); *Rana v. LaRose*, No. 26-cv-285-RSH-DDL, 2026 WL 266630, *3 (S.D. Cal. Feb. 2, 2026) (applying the *Banda* test in the context for a § 1225(b) detainee).

Under the multi-factor test, the court analyzes "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the

government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F.Supp.3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F.Supp.3d 853, 858-59 (D. Minn. 2019)).

First, the court must consider "the most important factor" which is the length of Petitioners' detentions. *Banda*, 385 F.Supp.3d at 1118. The Ninth Circuit has acknowledged that "detentions longer than six months [are] considered 'prolonged' in cases such as this where 'no individualized bond hearings [has] taken place at all." *Tonoyan*, 2025 WL 3013684, *4 (quoting *Rodriguez Diaz*, F.4th at 1207); *Abdul Kadir v. Larose*, No. 25-cv-1045-LL-MMP, 2025 WL 2932654, *5 (S.D. Cal. Oct. 15, 2025). Courts have found detention for seven months to be prolonged. *See e.g.*, *Perez v. Decker*, No. 18-CV-5279, 2018 WL 3991497, *5-6 (S.D.N.Y. Aug. 20, 2018) (granting a bond hearing for a § 1225(b) detainee held for nine months); *Brissett v. Decker*, 324 F.Supp.3d 444, 452 (S.D.N.Y. 2018) (granting a bond hearing for a § 1225(b) detainee held for nine months); *Cabral v. Decker*, 331 F.Supp.3d 255, 261 (S.D.N.Y. 2018) (granting a bond hearing for a § 1226(c) detainee held for seven months); *Masood v. Barr*, No. 19-cv-07623-JD, 2020 WL 95633 (granting a bond hearing for a § 1225(b) detainee held "for nearly nine months"). Petitioner Fu has been detained since May 26, 2025, totaling over eleven months. ECF No. 60, at ¶ 224. Petitioner Guo has been detained since June 2, 2025, totaling over ten months. *Id.* at ¶ 115. Petitioner Li has been detained since June 3, 2025, totaling over ten months. *Id.* at ¶ 174. The court finds Petitioners' detentions, all of which have exceeded ten months, factor in their favor.

Second, the court must consider the likely length of Petitioners' detentions. Courts find that "undetermined, but likely significant, period of mandatory detention through the appeals process" factors towards a finding in favor of habeas petitioners. *Gao v. LaRose*, 805 F.Supp.3d 1106, 1111 (S.D. Cal. 2025). All three of the Petitioners have had their merits hearings. *See* ECF

No. 60, at 30 ¶ 146 (Petitioner Guo filed an appeal to the Board of Immigration Appeals); *id.* at 38 ¶ 203 (Petitioner Li filed an appeal to the Board of Immigration Appeals); *id.* at 45 ¶ 250 (Petitioner Fu filed an appeal to the Board of Immigration Appeals). Petitioner Guo has received his briefing schedule, but as of the bail hearing, the other two had not.[28] *See* ECF No. 63, at 2. Even after the BIA makes its decision, the Petitioners will be eligible to appeal their decisions to the Ninth Circuit which could "take up to two years or longer." *Banda*, 385 F.Supp.3d at 1119; *see also Sanchez-Rivera v. Matuszewski*, No. 22-cv-1357-MMA, 2023 WL 139801, *6 (S.D. Cal. Jan. 9, 2023) (finding that an appeal to the Ninth Circuit would add sufficient length to detention that would weigh in favor of a bond hearing); *Hong*, 2022 WL 1078627, *7 ("[A]ppeals pend in the Ninth Circuit for 12 to 20 months before oral argument, and then an additional three months to a year after oral argument before a decision is issued"). This "undetermined, but likely significant" delay through the appeals process weighs in Petitioners' favor.

Third, the court must consider whether the conditions of Petitioners' confinement "resemble penal confinement." *Banda*, 385 F.Supp.3d at 1119 (quoting *Jamal*, 358 F.Supp.3d at 860). The more a habeas petitioner's confinement resembles penal confinement, the "stronger his argument" is. *Id.* Petitioners are being held at the Hagåtña Detention Facility. *See* ECF No. 60, at 30 ¶ 147; *id.* at 38 ¶ 204; *id.* at 45 ¶ 251. The Guam Department of Corrections has a Memorandum of Understanding with the federal government to house its federal criminal detainees and its federal immigration detainees at this location.[29] Up until December of 2025, the federal criminal detainees and the federal immigration detainees were being held in the same block, Alpha block. ECF No. 69. The U.S. Marshals only moved the federal criminal detainees out of the facility after the Director of Corrections confirmed in this court that the conditions at

[28] On April 9, 2026, the court learned that there has not been an update on any of Petitioners' appeals. ECF No. 70.

[29] Rodney Sayama testified that the ICE had an agreement with the Guam Department of Corrections to house its federal immigration detainees here.

the detention facility were "inhumane." *See U.S. v. McLain*, No. 1:11-cr-00058, ECF No. 437 (D. Guam Dec. 19, 2025). Based on the extensive testimony from the witnesses, the court finds that the conditions at the Hagåtña Detention Facility where the detainees have been housed clearly resemble penal confinement. During the hearings, Respondents offered to move the Petitioners to the Honolulu Detention Center in Hawaii. Even if the court were to accept for the sake of argument that this move would not violate Petitioners' constitutional due process right of access to their attorney, the court notes that the conditions at the Honolulu Detention Center were a great concern to the federal judge in Hawaii. Moreover, the court is not convinced that the conditions at that facility, necessary to accommodate the medical needs of the Petitioners, are significantly better than the conditions at the facility here.[30] *See Wang v. Derr, et al.*, No. 25-CV-00231 JAO-RT, *4 n.3 (D. Haw. Jul. 16, 2025). Petitioners' detentions at the Hagåtña Detention Facility or the Honolulu Detention Center would weigh in favor of Petitioners.

Fourth and fifth, the court must consider whether the Petitioner or the Respondents have caused undue delays in the removal proceedings. *See Banda*, 385 F.Supp.3d at 1119-20. Courts note that "a petitioner's pursuit of defenses to removal should not be held against a determination that they are entitled to due process." *Bayani*, 2026 WL 194748, *3 (citing *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F.Supp.3d 959, 965 (D. Minn. 2019)). Neither party has alleged any undue delays. Both parties agree that these factors are neutral.

Sixth, the court must consider whether it is likely that the immigration proceedings will result in a final order of removal. *See Banda*, 385 F.Supp.3d at 1120. Petitioners asylum

---

[30] While Petitioner did not present any evidence on the conditions of the federal detention center in Honolulu, the court takes judicial notice of the District Court of Hawaii's concern in *Wang v. Derr, et al.*, No. 25-CV-00231 JAO-RT, *4 n.3 (D. Haw. Jul. 16, 2025). There, the court "expresse[d] concern about the alleged conditions" that the petitioner there faced, including that the facility did not schedule petitioner for an MRI for weeks after they informed him they would, the facility did not provide distilled water for petitioner's CPAP machine, and the facility did not use sanitary wipes to clean petitioner's CPAP machine. *See id.* The court noted that the government did not dispute the facts, and, as a result, assumed the facts were true. *See id.*

applications have all been denied, but they allege it was "due to a legal question of first impression" which they contend has merit upon appeal. *See* ECF No. 60, at 30 ¶ 145, 38 ¶ 202, 45 ¶ 249. Here, like in *Banda*, there is not sufficient information to determine whether Petitioners have strong cases on appeal or not. *Banda*, 385 F.Supp.3d at 1120. As such, this factor is neutral. *See id.*

Three of the factors, including "the most important one," weigh in Petitioners' favor, and the other three are neutral. Accordingly, Petitioners' due process rights have been violated. The court finds that the mandatory detentions under § 1225(b) have been unreasonably prolonged without a bond hearing based on the multi-factor *Banda* test.

## V. <u>CONCLUSION</u>

Based on the foregoing, the court GRANTS Petitioners' habeas petition under 28 U.S.C. § 2241 for individualized bond hearings before an immigration judge.[31] The court hereby ORDERS Respondents to arrange individualized bond hearings for each of the Petitioners before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that the individual Petitioners are a danger to the community or a flight risk. If the hearing does not occur within fourteen (14) days of this Order, the Petitioners shall be released from Respondents custody. *See Sadeqi v. LaRose*, No. 25-cv-2587-RSH-BJW, 2025 WL 3154520, *4 (S.D. Cal. Nov. 12, 2025). The immigration court "should consider Petitioner[s'] financial circumstances or alternative conditions of release" if it does determine that they are not flight risks or dangers to the community. *See Maksim v. Annex*, No. 1:25-cv-00955-SKO, 2025 WL 2879328, *6 (E.D. Cal. Oct. 9, 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th

---

[31] As mentioned above, the parties agreed that the remaining claims would become moot if the court granted the petition based on the constitutional due process claim for prolonged detention. As a result, the court does not reach a final decision on these claims. *See Zhakuov v. Noem*, No. 3:26-cv-00288-RBM-DDL, 2026 WL 517981, *4 (S.D. Cal. Feb. 25, 2026) (finding that the court did not need to reach the petitioner's other claims for relief because the court found that the petitioner was entitled to relief based on his claim of unconstitutionally prolonged detention). In addition, the Petitioners' Motion for Release on Bail Pending Habeas Adjudication is now moot.

Cir. 2017)). The court further ORDERS Respondents to file a status report to the court three weeks from the date of this order.

**SO ORDERED.**




**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Apr 27, 2026**